# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **AVITA RESHON JARRETT,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | |
| } | **Case No. 2:14-cv-01483-JEO** |
| **STEWART DEERMAN, in his** } | |
| **individual capacity, and CITY OF** } | |
| **CALERA, ALABAMA, a municipal** } | |
| **corporation,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case comes before the court on the motion for summary judgment of Defendants Stewart Deerman ("Deerman") and the City of Calera, Alabama ("Calera"). (Doc. 34).[1] Plaintiff Avita Jarrett ("Jarrett") has responded and the parties have fully briefed the motion. (Docs. 35, 40, 43). Additionally, the Defendants filed a motion to strike portions of the evidentiary exhibits Jarrett submitted with her response to the summary judgment motion. (Doc. 44). The Court has considered the parties' briefs, evidentiary submissions, and the motion to strike. For the reasons stated below, the court will grant the Defendants' motion for summary judgment and will deny as moot the Defendants' motion to strike.

---

[1] References to "Doc. __" are to the electronic numbers assigned by the Clerk of the Court. Page references will be to the electronic page numbers at the top of the document unless noted otherwise.

1

## PROCEDURAL AND FACTUAL BACKGROUND[2]

This case arises out of Jarrett's arrest on September 30, 2013, by local law enforcement and the subsequent dismissal of her charges on April 16, 2014. (Doc. 1 ¶ 9, 28). These actions were precipitated by the following events.

On July 5, 2013, three individuals driving a Chevrolet Equinox with a tag registered in Jarrett's name[3] stole a $228 vacuum cleaner from the Calera Walmart. (Doc. 35-3). On July 17, 2013, Walmart's loss prevention officer Evan Russell filed a complaint in the Municipal Court of Calera[4] alleging that Jarret had committed the July 5 theft.[5] (Doc. 35-4). The Municipal Court then issued a warrant for Jarrett's arrest for misdemeanor theft. (*Id.*)

---

[2] Consistent with the summary judgment standard, the court presents the facts in the light most favorable to the plaintiff.

[3] Jarret purchased the Chevrolet Equinox from B.J.'s Auto Sales in Fort Deposit, Alabama, in February 2012. (Doc. 35-2 at 51(Deposition page number)). She subsequently returned the vehicle to B.J.'s Auto Sales due to mechanical failure. (Doc. 35-1 at ¶ 18). B.J.'s Auto Sales resold the vehicle with Jarrett's tag still inside the vehicle. (Doc. 35-1 at ¶ 18; Doc. 35-2 at 58 (Deposition page number)).

[4] Theft of property that does not exceed $500 and "which is not taken from the person of another" is third degree theft, a class A misdemeanor in Alabama. Ala. Code § 13A-8-5. This theft charge, therefore, fell under the jurisdiction of the municipal court. Ala. Code. § 12-11-30(2); Ala. Code § 12-14-1.

[5] Detective Stewart Deerman was aware of this investigation as of July 12, 2013, because he obtained a photograph of Jarrett from the Montgomery County Sheriff's Department and informed Russell of the misdemeanor warrant procedures since the case involved a matter under $500. (*See* Doc. 35-3 at 1-7).

On July 25, 2013, three individuals driving a Chevrolet Equinox with a tag registered in Jarrett's name stole more than $1,000 worth[6] of merchandise from the Calera Walmart. (Doc. 35-1 ¶ 16). Detective Deerman investigated the theft at the Calera Walmart. (Doc. 35-5). As part of his investigation, he obtained security camera footage that captured the images of the individuals who committed the theft. (*Id*. at 3). Because the property stolen exceeded $500 in value, and would therefore constitute felony theft, Deerman met with the Shelby County District Attorney's Office to discuss applying for a felony warrant. (Doc. 35-5 at 4). The assistant district attorney "confirmed [his] belief that there was enough evidence to support [Deerman's] application for … a warrant." (*Id.*) On August 21, 2013, Deerman presented evidence of the vehicle's registration and the security camera footage, which he believed showed Jarrett, to the Shelby County District Court. (*Id.*; Doc. 35-6). The Shelby County District Court issued the warrant for the arrest of Jarrett on the charge of second degree felony theft. (*Id.*)

On September 27, 2013, Jarrett underwent a surgical procedure on her eyes, the recovery for which her physician expected to last two weeks. (Doc. 1 ¶7). After her procedure, she stayed at her aunt's house in Montgomery to recuperate. (Doc. 35-2 at 250 (Deposition page number)). As part of her recovery and to avoid

---

[6] Theft of property in excess of $500 but not exceeding $2500, and "which is not taken from the person of another," is second degree theft, a class C felony in Alabama. Ala. Code § 13A-8-4. This theft charge, therefore, fell under the jurisdiction of the district court. Ala. Code § 12-12-32.

3

infection, Jarrett was taking prescribed medication. (*Id.*) She was a nursing student at the time and had a limited number of absences that she could use for surgery and recovery time. (Doc. 1 ¶ 8).

On September 30, 2013, while staying at her aunt's house, Jarrett was arrested for second degree felony theft and taken to the Montgomery County Jail on the charge initiated by Detective Deerman. (Doc. 35-2 at 99, 111 (Deposition pages)). Jarrett was then transported to the Shelby County Jail, where she remained until October 3, 2013, when she posted bail on the second degree felony theft charge. (Doc. 35-1 ¶ 11). She was then transported to the Talladega County Jail on October 3, pursuant to an outstanding warrant issued in 2007 for negotiating a worthless negotiable instrument. (Doc. 35-8). She posted bail for her charge in Talladega County on October 3, but she was held due to the misdemeanor theft warrant issued by the City of Calera on the first theft. (Doc. 35-2 at 165-66 (Deposition pages)). Because the City of Calera did not come to pick Jarrett up pursuant to that warrant, she was released from the Talladega County Jail on October 4, 2013. (Doc. 35-2 at 169 (Deposition page)).

On October 10, 2013, Jarrett met with Detective Deerman at the Calera Police Station. (Doc. 35-2 at 184 (Deposition page)). According to Deerman, after seeing Jarrett in person, he no longer believed that she was one of the suspects depicted on the Walmart security footage. (Doc. 35-5). Deerman stated that while

Jarrett was in his office, he called the Shelby County District Attorney's Office to recommend that her felony theft charge be dismissed. (Doc. 35-5). Jarrett disputes that statement, instead asserting that Deerman did not call the Shelby County District Attorney while she was in his office.[7] (Doc. 40-1). The next morning, Deerman had the Calera Municipal Court recall the misdemeanor theft warrant. (Doc. 35-7). On April 16, 2014, the Shelby County felony theft charge was dismissed. (Doc. 35-1 ¶ 28; Doc. 35-10).

Jarrett filed this action July 30, 2014. (Doc. 1). She asserts seven claims for relief, all arising out of her charge, arrest, and incarceration. The first three counts are brought against Deerman pursuant to § 1983. (Doc. 1 at Count I – unlawful arrest and seizure, Count II – false imprisonment, and Count III – malicious prosecution). The next two counts and the last count are state law claims against Deerman. (*Id*. at Count IV – false imprisonment, Count V – negligence, & Count VII – Malicious Prosecution). The remaining count is brought against the City of Calera for negligence. (*Id*. at Count VI – neglectfulness, unskillfulness, and carelessness). (Doc. 1 at 1-15). The Defendants seek summary judgment as to all the claims. (Doc. 34). Plaintiff does not oppose the granting of summary judgment as to her § 1983 claim for false imprisonment (Count II) and her state law claim for false imprisonment (Count IV). (Doc. 40 at 10 & 18).

---

[7] Because of the posture of this case on summary judgment, the court accepts and adopts Jarrett's version of the event.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 F. App'x 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## ANALYSIS

As a threshold matter, Deerman argues that the federal claims against him should be dismissed because he is entitled to qualified immunity. (Doc. 43 at 3). Qualified immunity offers complete protection for government officials sued in their individual capacities if such conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Qualified immunity is not merely a defense against liability but rather provides immunity from suit.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Jarrett concedes that Deerman was acting within the course and scope of his discretionary authority when the allegedly wrongful acts occurred.  (Doc. 40 at 6-7).  Thus, the burden shifts to Jarrett to show that qualified immunity is not appropriate.  *Lee*, 284 F.3d at 1194.

To determine whether qualified immunity is appropriate, the court must first "decide whether the facts alleged, assuming they are true, demonstrate that the defendant[] violated a constitutional right....  If this is answered in the affirmative, we proceed to the second query, which is to determine whether the right violated was clearly established."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).

Turning to the present case, it is well-settled that an arrest without probable cause plainly violates the right to be free from an unreasonable search under the Fourth Amendment.  *Id.* "Nevertheless, officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest."  *Id.*  To overcome immunity in a case such as this one, then,

a plaintiff "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances." *Kingsland*, 382 F.3d at 1232. This is where Jarrett's claim fails as a matter of law.

The record demonstrates that Deerman had arguable probable cause for Jarrett's arrest. He had evidence that an automobile with a tag registered in Jarrett's name was used in the commission of the theft. (Doc. 35-5). He reviewed surveillance footage of the theft from the Calera Wal-Mart. He compared this footage to a photograph of Jarrett and believed the woman on the surveillance footage resembled Jarrett. *Id.* He discussed this evidence with the district attorney prior to seeking a felony arrest warrant from the court. *Id.* Upon reviewing the evidence, the court made an independent adjudication that probable cause supported the issuance of an arrest warrant. (Doc. 35-6). Deerman's investigation turned up evidence sufficient to form probable cause. *See United States v. Edmondson*, 791 F.2d 1512, 1513-15 (11th Cir. 1986) (court found probable cause for an arrest when a license plate number of the car used in the aborted robbery was registered to a woman in an apartment where the defendant had been seen and the defendant was identified from bank surveillance photographs by persons located at the apartment and by a law enforcement agent who saw a man resembling the person depicted in a bank surveillance photograph); *see also United States v. Barnett*, 423 F.2d 694 (9th Cir. 1970) (concluding probable cause existed

where the defendant matched the physical description of the robber and his name and address matched that of the tag on the getaway car); *United States v. Gonzalez*, 2010 WL 2721882 (N.D. Ga. May 25, 2010) (finding probable cause for a search warrant for a residence when the defendant was connected with the residence via the license plate of the suspect's getaway car and after a person matching the general description of the defendant was seen at the residence shortly after the robbery).

Jarrett has not presented sufficient evidence to demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances. She argues that the connection of the tag registration to her is insufficient because it does not "mean that the individual to whom the tag is registered was operating the vehicle at the time of the crime." (Doc. 40 at 8). She also argues that the fact that the surveillance video depicts an African-American female does not automatically mean she is the person who committed the theft. (*Id.*) Finally, she argues that Deerman recklessly failed to confirm that the Equinox belonged to her and recklessly concluded that she was the perpetrator because she is an African-American female. (*Id.* at 9 & 19).

Jarrett's contentions are insufficient to overcome the motion for summary judgment for a number of reasons. First, the guiding standard on claims such as those advanced by Jarratt involves only a determination of probable cause, not

some greater consideration. Second, Deerman based his initial identification, at least in part, premised on the "facial features [in] Jarrett's photograph and … the surveillance video," which he believed were "very similar."[8] (Doc. 35-5 at 3). Third, Jarrett's conclusions do not overcome the record evidence discussed above that is before the court.

Thus, the court finds Deerman is entitled to qualified immunity and the claims against him are due to be dismissed on that basis. However, even if he were not entitled to immunity, the claims against him would still be subject to dismissal as a matter of law, as discussed below.

### A.   Absence of Probable Cause (Count I)

Jarrett alleges that Detective Deerman violated her rights by causing a warrant to be issued without probable cause, which led to her alleged unlawful arrest and seizure. (Doc. 1 at ¶ 36 (Count I)). The Fourth Amendment to the United States Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. However, "if the facts supporting an arrest are put before an intermediate such as a magistrate or grand jury, the intermediate's decision breaks the causal chain and insulates an initiating

---

[8] Deerman also states in his declaration that he "consulted with fellow investigators … who also agreed" with his assessment at the time that Jarrett was one of the perpetrators. (Doc. 35-5 at 3).

10

party." *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977).[9]  As already discussed, the record reflects that Deerman reviewed the collected evidence with a Shelby County assistant district attorney before seeking an arrest warrant for Jarrett.  (Doc. 35-5).  Upon Deerman's application for the warrant, the court made an independent determination of whether there was adequate probable cause to support issuance of a warrant.  (Doc. 35-5; Doc. 35-6).  That decision breaks the causal chain and insulates Deerman from liability.  *Rodriguez*, 556 F.2d at 1193.

Furthermore, Jarrett's claim fails because the arrest was based upon probable cause.  "The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  As already noted, the Eleventh Circuit has previously concluded that license plate registration information coupled with a matched physical description is sufficient to form probable cause.  *Edmondson*, 791 F.2d at 1513; *see also Barnett*, 423 F.2d at 694 (concluding probable cause existed where defendant matched the physical description of the robber and his name and address matched that of the tag on the getaway car).  Because probable cause supported the arrest in this instance, it was not unlawful.

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

### B.     False Imprisonment (Counts II and IV)

Jarrett next asserts claims for false imprisonment against Deerman. (Doc. 1 at ¶¶ 40-49 (Count II) and ¶¶ 59-61 (Count IV)). False imprisonment and false arrest are somewhat interchangeable terms for the same tort. *Cf. Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("We shall thus refer to [false arrest and false imprisonment] together as false imprisonment."). Again, as discussed above, "one who is engaged merely in investigatory work is not liable for a resulting false arrest." *Rodriguez*, 556 F.2d at 1193. Moreover, "[t]he issuance of a warrant -- even an invalid one . . . constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, [her] claim is for malicious prosecution rather than false arrest." *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014).[10] The record demonstrates that a warrant for Jarrett's arrest was issued. Because a warrant, even an invalid one, fulfills the necessity for legal process, Jarrett's federal and state claims for false imprisonment fail as a matter of law and are due to be dismissed. *Holland v. City of Auburn*, 2015 WL 7862990, *3 (M.D. Ala. Dec. 3, 2015).[11]

---

[10] **Error! Main Document Only.**Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[11] Jarrett does not oppose the summary judgment as to Count II and Count IV. (Doc. 40 at 10 & 18).

12

### C. Malicious Prosecution (Count III)

Jarrett next asserts a federal civil rights claim for malicious prosecution against Deerman. (Doc. 1 at 10 (Count III)). "Unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). To establish a malicious prosecution claim under § 1983, a plaintiff must prove "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234. The elements of the common law tort of malicious prosecution are: (1) the defendant initiated judicial proceedings against the plaintiff (2) without probable cause and with malice, and (3) those proceedings terminated in the plaintiff's favor and (4) caused the plaintiff damage. *Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1022 (Ala. Civ. App. 1999). The Defendants argue that Jarrett's malicious prosecution claim fails because she cannot establish the second element of the common law tort – a lack of probable cause and malice.

The existence of probable cause defeats a § 1983 malicious prosecution claim. *Id.* "If there are any undisputed facts of record establishing that [the defendant] had probable cause to bring the former action . . . against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary

13

judgment is appropriate." *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988).

The record demonstrates the following undisputed facts: Deerman had evidence that a car with a tag registered to Jarrett had been used in the commission of the thefts, and Deerman reviewed the Calera Walmart surveillance footage and believed one of the suspects depicted in the footage resembled Jarrett. This evidence was sufficient to form arguable probable cause. *Edmondson*, 791 F.2d at 1513. Regardless of the undisputed fact that upon meeting Jarrett in person Deerman no longer believed the suspect on film resembled her, at the time he sought an arrest warrant he did believe it to be Jarrett. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) ("Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense."). Undisputed facts demonstrate that probable cause supported Deerman's request for an arrest warrant.

Additionally, the undisputed evidence of record demonstrates the absence of any malice on the part of Deerman. The evidence establishes that Deerman acted reasonably, prudently, and based upon probable cause. When he discovered his

error upon meeting Jarrett, he promptly took steps to have the warrant against her dismissed.[12] "When a party discovers his 'mistake as to the proper party sued' and promptly corrects his error by discontinuing his suit against the wrong party, malice cannot be inferred from his actions for purposes of proving malicious prosecution." *Willis v. Parker*, 814 So. 2d 857, 864 (Ala. 2001) (quoting *Dillon v. Nix*, 318 So. 2d 308, 310 (Ala. Civ. App. 1975)). Because Jarrett cannot establish that Deerman acted "with malice and without probable cause," she cannot prove the second element of the common law tort of malicious prosecution and her § 1983 claim fails as a matter of law.

D. **State Law Claims**

1. **False Imprisonment (Count IV)**

Jarrett asserts four state law claims. The first claim for false imprisonment against Deerman was discussed above and is due to be dismissed. (Doc. 1 at 11 (Count IV)). The state false imprisonment claim is also due to be dismissed for another reason – the presence of probable cause for the arrest. State law defines false imprisonment as "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. Although a wrongful arrest can support a claim for false imprisonment, the

---

[12] Although Jarrett disputes Deerman called the District Attorney in her presence (and the court accepts that fact in her favor at this juncture), she does not dispute that he initiated other steps to have the warrants withdrawn.

presence of probable cause will nullify it. *Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994). "An officer has probable cause . . . when, at the time the arrest is made, the facts and circumstances within his knowledge, and of which he has reasonably trustworthy information, are sufficient to lead a prudent person to believe that the suspect has committed an offense." *Gord v. State*, 475 So. 2d 900, 902-03 (Ala. Crim. App. 1985). As discussed above, the court found that probable cause supported the arrest of Jarrett in the underlying criminal case.[13] Thus, Jarrett's state law false imprisonment claim is due to be dismissed.

## 2. Negligence against Detective Deerman (Count V)

Jarrett asserts a state law negligence claim against Deerman in her fifth count. (Doc. 1 at 12 (Count V)). To establish her negligence claim, Jarrett must prove (1) that Deerman owed her a duty; (2) that he breached that duty; (3) that she suffered a loss or injury; and (4) that Deerman's breach was the actual and proximate cause of her loss or injury. *DiBiasi v. Joe Wheeler Elec. Mbrshp. Corp.*, 988 So. 2d 454, 460 (Ala. 2008). Jarrett asserts that Deerman had a duty (1) to refrain from charging her in the absence of probable cause, (2) to refrain from prosecuting her for crimes Deerman knew she did not commit, and (3) to ascertain whether she owned the Equinox and whether she was the person depicted in the surveillance video. She further asserts he breached those duties in this instance.

---

[13] Again, Jarrett does not oppose the summary judgment motion as to Count IV. (Doc. 40 at 18).

16

As discussed above, Deerman obtained a warrant based upon arguable probable cause. He is not an attorney or prosecutor and he has no decision-making authority to dismiss felony charges, so he neither owed nor breached any duty to Jarrett regarding the prosecution of her charge. He breached no duty in relying upon the Equinox tag registration information and his own initial belief that the person on the surveillance footage resembled Jarrett. Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the [plaintiff] had committed . . . an offense." *Beck*, 379 U.S. at 91. That is the situation in this instance. The motion for summary judgment is due to be granted on the state law negligence claim against Deerman.

### 3. Negligence against the City of Calera (Count VI)

Jarrett also asserts a state law negligence claim against the City of Calera under Alabama Code § 11-47-190.[14] (Doc. 1 at 13 (Count VI)). She initially

---

[14] Section 11-47-190 provides:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty … and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured….

Ala. Code § 11-47-190.

contends that Callera is vicariously liable for Deerman's negligence. (*Id.* at ¶¶ 68-70). As discussed in the foregoing section, Jarrett's negligence claim against Deerman fails as a matter of law. "In the absence of proof of a negligent act committed by a person as to whom the City may properly be held vicariously liable or proof from which such an inference could properly have been drawn, the plaintiff [is] not entitled to recover under § 11-47-190." *City of Montgomery v. Patterson*, 80 So. 3d 264, 269 (Ala. Civ. App. 2011). Thus, Calera cannot be held vicariously liable for any action by Deerman.

Jarrett's second contention is that Calera was negligent in failing to dismiss the theft charges against her. The complaint states:

> The City of Calera owed to Plaintiff the duties to dismiss the charges against Plaintiff and to refrain from further prosecution of the charges against Plaintiff immediately upon obtaining knowledge that Plaintiff had not committed any crime and/or that Deerman had charged, arrested and incarcerated the wrong person.

(Doc. 1 ¶ 71). This claim, however, is a nonstarter. The Calera Municipal Court did recall the misdemeanor theft charges against Jarrett on October 11, 2013, the day after she met with Deerman. (Doc. 35-5; Doc. 35-7). The felony theft charge was pending in the Shelby County District Court, beyond the authority of the City of Calera. In other words, Calera had no duty (or authority) to drop that charge. Even so, the Shelby County District Court did dismiss the felony theft charge on

18

April 16, 2014. (Doc. 35-1 ¶ 28; Doc.35-10). In short, the negligence claim against Calera fails as a matter of law and is due to be dismissed.

### 4. Malicious Prosecution

Jarrett asserts a state law claim of malicious prosecution against Deerman in Count VII. The elements for a federal malicious prosecution claim are determined by state common law, so Deerman's liability for malicious prosecution has been discussed already above. For the reasons stated therein, Jarrett's malicious prosecution claim is due to be dismissed.[15]

### E. The Defendants' Motion to Strike

Pursuant to Rule 12(f), the Defendants have moved to strike portions of Jarrett's evidentiary materials submitted in support of her summary judgment response. (Doc. 44). The materials at issue are: (1) paragraph 6 of Plaintiff's Exhibit A (an affidavit from Jarrett), stating that her physical appearance does not match the surveillance footage; and (b) Plaintiff's Exhibit B, a Crime Stopper flyer containing still images of surveillance footage taken during a robbery at Ulta Beauty. The Defendants argue that these materials are irrelevant and due to be stricken. The court did not consider these materials in reaching its decision on the

---

[15] The Defendants have raised other defenses to Jarret's claims. Premised on the court's determination of the motion for summary judgment, the undersigned pretermits any discussion of the other matters.

motion for summary judgment. Accordingly, the Defendants' motion to strike is moot.

## CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment (doc. 34) is due to be granted and their motion to strike (doc. 44) is deemed moot. The complaint is due to be dismissed with prejudice. An order in accordance with the court's findings will be entered contemporaneously.

**DONE**, this the 1st day of December, 2016.

*John E. Ott*

_____
**JOHN E. OTT**
Chief United States Magistrate Judge